IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LINDA ROLLINS,                          )  Civ. No. 10-00336 HG-KSC
                                        )
        Plaintiff,                      )
                                        )
    vs.                                 )
                                        )  **ORDER DENYING MOTION TO**
                                        )  **DISMISS COMPLAINT AGAINST**
MAUI DREAMS DIVE COMPANY,               )  **SPECIALLY APPEARING DEFENDANT**
RACHEL DOMINGO, DONOVAN                  )  **OFF-SHORE FISHING COMPANY**
DOMINGO, BEQA LAGOON SUPPORT             )  **LTD, OR ALTERNATIVELY, TO**
SERVICES, INC., OFF-SHORE               )  **ENFORCE THE FORUM SELECTION**
FISHING COMPANY LTD.,                   )  **CLAUSE (DOC. 65)**
                                        )
        Defendants.                     )
                                        )
_____ )
                                        )
                                        )
MAUI DREAMS DIVE COMPANY,               )
RACHEL DOMINGO, and DONOVAN             )
DOMINGO,                                )
                                        )
        Cross Claimants,                )
                                        )
    vs.                                 )
                                        )
BEQA LAGOON SUPPORT SERVICES,           )
INC., and OFFSHORE FISHING              )
COMPANY, LTD.,                          )
                                        )
        Cross Defendants.               )
                                        )
_____ )
                                        )
                                        )
R&D DOMINGO, INC., DBA MAUI             )
DREAMS DIVE COMPANY                      )
(ERRONEOUSLY SUED HEREIN AS             )
MAUI DREAMS DIVE COMPANY),              )
RACHEL DOMINGO, DONOVAN                  )
DOMINGO,                                )
                                        )
        Third-Party Plaintiffs,         )
                                        )
    vs.                                 )

1

MCCOY ENTERPRISES, LTD, AQUA      )
TREK USA, INC., AQUA-TREK,        )
AQUA-TREK (FIJI), AQUA-TREK       )
DIVING, AQUA TREK FIVE STAR       )
DIVING, AND DOE DEFENDANTS 1-     )
10,                               )
    Third-Party Defendants.    )
                                  )
                                  )
_____   )
                                  )
                                  )
MCCOY ENTERPRISES, LTD.,          )
                                  )
    Third-Party Cross          )
Claimant,                         )
                                  )
    vs.                        )
                                  )
BEQA LAGOON SUPPORT SERVICES,     )
INC. and OFF-SHORE FISHING        )
COMPANY, LTD.,                    )
                                  )
    Cross Defendants,          )
                                  )
AQUA-TREK, AQUA-TREK USA, INC.,   )
AQUA-TREK [FIJI], AQUA-TREK       )
DIVING, AQUA-TREK FIJI DIVING,    )
and AQUA-TREK FIVE STAR DIVING,   )
                                  )
    Third-Party Cross          )
    Defendants.                )
                                  )
                                  )
_____   )
                                  )
                                  )
MCCOY ENTERPRISES, LTD.,          )
                                  )
    Third-Party Counter        )
    Claimant,                  )
                                  )
    vs.                        )
                                  )
R&D DOMINGO, INC. DBA MAUI        )
DREAMS DIVE COMPANY, RACHEL       )
DOMINGO, and DONOVAN DOMINGO,     )

```
Third-Party Counter        )
Defendants.                )
                           )
                           )
_____  )
```

**ORDER DENYING MOTION TO DISMISS COMPLAINT AGAINST SPECIALLY
APPEARING DEFENDANT OFF-SHORE FISHING COMPANY LTD, OR
ALTERNATIVELY, TO ENFORCE THE FORUM SELECTION CLAUSE (DOC. 65)**

Plaintiff Linda Rollins brings suit to recover damages for injuries she allegedly suffered during a scuba diving trip in Fiji. Defendant Off-Shore Fishing Company LTD doing business as Beqa Lagoon Resort (hereafter "Beqa Lagoon Resort") is a Fijian corporation that operates the resort where the Plaintiff allegedly suffered her injuries. Defendant Beqa Lagoon Resort moves to dismiss all claims against it for lack of personal jurisdiction, or alternately, to enforce a forum selection clause placing venue in Fiji.

The Court has specific jurisdiction over Defendant Beqa Lagoon Resort because its agent, Defendant Beqa Lagoon Support Services, Inc. (hereafter "Beqa Services"), purposefully availed itself of the protections of Hawaii law on behalf of Defendant Beqa Lagoon Resort. Exercising specific jurisdiction over Defendant Beqa Lagoon Resort is reasonable.

The Forum Selection Clause put forward by Defendant Beqa Lagoon Resort is not enforceable. Forcing the Plaintiff to litigate her claims in Fiji, a forum in which the judicial system

is compromised, would be unreasonable.

Defendant Beqa Lagoon Resort's Motion to Dismiss Complaint Against Specially Appearing Defendant Off-Shore Fishing Company LTD., or Alternatively, to Enforce the Forum Selection Clause is **DENIED**.

## PROCEDURAL HISTORY

The relevant filings are as follows:

On June 14, 2010, Plaintiff filed a Complaint. (Doc. 1.)

On July 22, 2010, Defendants R&D Domingo, Inc., dba Maui Dreams Dive Company[1], Rachel Domingo, and Donovan Domingo filed a Cross-Claim against Defendant Off-Shore Fishing Company, LTD. (Doc. 15-1.)

On the same day, Defendants R&D Domingo, Inc., dba Maui Dreams Dive Company, Rachel Domingo, and Donovan Domingo filed a Third-Party Complaint against McCoy Enterprises, LTD., Aqua Trek USA, Inc., Aqua-Trek, Aqua-Trek (Fiji), Aqua-Trek Diving, Aqua-Trek Fiji Diving, and Aqua-Trek Five Star Diving. (Doc. 15-2.)

On October 29, 2010, the Court denied Defendant Beqa

---

[1]R&D Domingo, Rachel Domingo, and Donovan Domingo did not provide a caption to the Cross-Complaint. The body of the Cross-Complaint states that one of the Cross-Claimants is Maui Dreams Dive Company. The Third-Party Complaint filed on the same day, however, states that R&D Domingo d/b/a Maui Dream Dive Company was erroneously sued as Maui Dream Dive Company. The Court will consider R&D Domingo d/b/a Maui Dreams Dive Company to be the moving party in the Cross-Claim and Third-Party Complaint. In this order, for clarity and consistency R&D Domingo will be refereed to as "Maui Dreams Dive Company" unless otherwise noted.

4

Services' Motion To Dismiss Complaint. (ORDER DENYING MOTION TO DISMISS COMPLAINT AGAINST SPECIALLY APPEARING DEFENDANT BEQA LAGOON SUPPORT SERVICES, INC (DOC. 23), (Doc. 42).)

On November 5, 2010, Third-Party Defendant McCoy Enterprises filed a Cross-Claim against Defendant Beqa Lagoon Support Services, Inc. and Off-Shore Fishing Company, LTD, and Third-Party Defendants Aqua-Trek, Aqua-Trek USA, Inc., Aqua-Trek (Fiji), Aqua-Trek Diving, Aqua-Trek Fiji Diving, and Aqua-Trek Five Star Diving. (Doc. 45.)

On December 10, 2010, Defendant Off-Shore Fishing Company, LTD ("Beqa Lagoon Resort") filed "Motion To Dismiss Complaint Against Specially Appearing Defendant Off-Shore Fishing Company, LTD., Or Alternatively, To Enforce The Forum Selection Clause." (Doc. 65.)

On January 3, 2011, Plaintiff filed "Plaintiff Linda Rollins' Opposition To Defendant Off-Shore Fishing Company LTD.'s Motion To Dismiss Complaint." (Doc. 70.)

On the same day, Third-Party McCoy Enterprises filed "Third-Party Defendant McCoy Enterprises, LTD.'s Memorandum In Opposition To Off-Shore Fishing Company, LTD.'s Motion To Dismiss Complaint Against Specially Appearing Defendant Off-Shore Fishing Company, LTD., Or Alternatively, To Enforce The Forum Selection Clause." (Doc. 71.)

On the same day, Defendants R&D Domingo, Inc., dba Maui

Dreams Dive Company, Rachel Domingo, and Donovan Domingo filed "Defendants / Third-Party Plaintiffs R&D Domingo, Inc., dba Maui Dreams Dive Company, Rachel Domingo, and Donovan Domingo's Joinder In Plaintiff's Linda Rollins' Opposition To Motion To Dismiss Complaint." (Doc. 72.)

On January 19, 2011, Defendant Beqa Lagoon Resort filed "Specially Appearing Defendant Off-Shore Fishing Company LTD.'s Reply Memorandum In Support Of Motion To Dismiss Complaint." (Doc. 74.)

On February 14, 2011 Defendant Beqa Lagoon Resort's Motion to Dismiss came on for hearing. The Court took the matter under submission. For the reasons set forth herein the motion is **DENIED**.

## BACKGROUND

Plaintiff Linda Rollins is a resident of Oakland, California. (Complaint at ¶ 1, (Doc. 1).) She alleges that on June 20, while she was on a shark dive in Fiji, she suffered severe injuries to her hand due to a faulty ladder. Plaintiff brings suit against five defendants.

Defendant R&D Domingo, Inc., d/b/a Maui Dreams Dive Company, (hereafter, "Maui Dreams Dive Company") is a Hawaii corporation that operated the dive shop where Plaintiff first learned about the resort.

Defendants Rachel and Donovan Domingo (hereafter, "R.

Domingo" and "D. Domingo" respectively) are residents of Hawaii and owners of Defendant Maui Dream Dive Company. Defendants R. and D. Domingo allegedly first informed Plaintiff about the resort in Fiji while she visited the Maui Dreams Dive Company. They chaperoned the scuba diving trip Plaintiff took in late June, 2010.

Beqa Lagoon Support Services, Inc. (hereafter, "Beqa Services") is a Nevada-based corporation that booked Plaintiff's trip to Fiji.

Off-Shore Fishing Company LTD doing business as Beqa Lagoon Resort (hereafter "Beqa Lagoon Resort"), is a Fijian corporation that owns and operates the resort. (Complaint at ¶ 2-6. (Doc. 1).)

Plaintiff alleges that in June 2008, during a vacation to Maui, she visited Defendant Maui Dreams Dive Company where she noticed a DVD advertisement for "Beqa Lagoon Resort" in Fiji. During this visit, Plaintiff alleges she spoke with Defendant D. Domingo about the DVD advertisement and learned that Defendants R. and D. Domingo, both owners of Maui Dreams Dive Company, were chaperoning a trip to Beqa Lagoon Resort at the end of June 2010. Upon returning home to California, the Plaintiff decided to join the scuba trip to Fiji and called Defendant Maui Dreams to arrange the details.

Defendant Maui Dreams referred Plaintiff to Third Party

Defendant McCoy Enterprises, a Hawaii travel agency, to book the trip. Plaintiff was told, however, that Defendant R. Domingo would be chaperoning the trip and handling all of the details. Plaintiff tendered payment for the trip to Third-Party Defendant McCoy Enterprises. Plaintiff was later contacted by Defendant Beqa Services Lagoon Support Services, Inc. (hereafter "Beqa Services") and sent an airline ticket and other information about the resort in Fiji.

On August 12, 2010, Defendant Beqa Services moved to dismiss the complaint for lack of personal jurisdiction. On October 29, 2010, the Court held that Defendant Beqa Services purposefully availed itself of the privilege of conducting business within Hawaii and that such purposeful availment was sufficient for the exercise of specific jurisdiction. (ORDER DENYING MOTION TO DISMISS COMPLAINT AGAINST SPECIALLY APPEARING DEFENDANT BEQA LAGOON SUPPORT SERVICES, INC (DOC. 23), (Doc. 42).) Defendant Beqa Services' motion was denied.

Defendant Beqa Lagoon Resort, specially appearing before this Court, now moves to dismiss the complaint for lack of personal jurisdiction or, in the alternative, enforce a forum selection clause.

## STANDARD OF REVIEW

### I.   PERSONAL JURISDICTION

Where a defendant moves to dismiss a complaint for lack of

personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Flynt Distrib. Co, Inc. V. Harvey, 734 F.2d 1389, 1392 (9th Cir. 2004). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of jurisdictional facts." Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990); Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 127-28 (9th Cir. 1995) ("[W]e only inquire into whether [the plaintiff's] pleadings and affidavits make a *prima facie* showing of personal jurisdiction")

Uncontroverted allegations in the plaintiff's complaint must be taken as true. AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). Although the plaintiff cannot simply rest on the bare allegations of its complaint, conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

Where, as here, no federal statute governs personal jurisdiction, the district court applies the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A); Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608-09 (9th Cir. 2010). Hawaii's long-arm jurisdictional statute is coextensive with federal due process requirements. In re Doe, 926 P.2d 1290, 1296 (Haw. 1996) (citing Cowan v. First Ins. Co., 608 P.2d 394,

401 (Haw. 1980).  The jurisdictional analyses under state law and federal due process requirements are identical.  <u>Id.</u>


**II.  FORUM SELECTION CLAUSE**

Federal law governs the interpretation and validity of a forum selection clause.  <u>Manetti-Farrow, Inc. v. Gucci America, Inc.</u>, 858 F.2d 509, 513 (9th Cir. 1988).  The enforcement of a forum selection clause in a contract is treated as a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  <u>Offshore Sportswear v. Vuarnet Int'l., B.V.</u>, 114 F.3d 848, 851 (9th Cir. 1997); <u>Arqueta v. Banco Mexicano, S.A.</u>, 87 F.3d 320, 324 (9th Cir. 1996).

In reviewing a Fed.R.Civ.P. 12(b)(3) motion, the district court does not accept the pleadings as true, as would be required under a Fed.R.Civ.P. 12(b)(6) analysis.  <u>Arqueta</u>, 87 F.3d at 324; <u>Richards v. Lloyd's of London</u>, 135 F.3d 1289, 1292 (9th Cir. 1998).  The district court is permitted to consider facts outside of the pleadings.  <u>Arqueta</u>, 87 F.3d at 324.

Because a Fed.R.Civ.P. 12(b)(3) motion has a substantial effect on the plaintiff's forum choices, the district court must draw all reasonable inferences in favor of the nonmoving party, and resolve all factual conflicts in favor of the nonmoving party.  <u>Murphy v. Schneider Nat'l., Inc.</u>, 362 F.3d 1133, 1139 (9th Cir. 2004); <u>Holland America Line, Inc. v. Wartsila North</u>

America, Inc., 485 F.3d 450, 455 (9th Cir. 2007). Alternatively, the court may hold an evidentiary hearing to resolve questions of credibility or disputed facts. Murphy, 362 F.3d at 1139-40. The plaintiff ultimately bears the burden of establishing that venue is proper. eBay Inc. v. Digital Point Solutions, Inc., 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009) (citing Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979)).

## ANALYSIS

### I.   PERSONAL JURISDICTION

Questions of personal jurisdiction must be decided on a case-by-case basis. See Pacific Atlantic Trading Co., Inc. v. M/V Main Exp., 758 F.2d 1325, 1327-28 (9th Cir. 1985). For the Hawaii District Court to exercise personal jurisdiction, the Defendant must have sufficient "minimum contacts" with the State of Hawaii such that the exercise jurisdiction "does not offend traditional notions of fair play and substantial justice." Schwarzenegger, 374 F.3d at 801 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Hawaii's long-arm jurisdictional statute is limited only by the operation of the Due Process Clause of the Fourteenth Amendment. In re Doe, 926 P.2d at 1296. Due process is satisfied if there is either "general jurisdiction" or "specific jurisdiction" over Defendant Beqa Lagoon Resort. Sher, 911 F.2d at 1361.

Here, the Plaintiff concedes that the Court does not have
general or specific jurisdiction directly over Defendant Beqa
Lagoon Resort.  The Plaintiff alleges, instead, that the Court
has agency jurisdiction over Defendant Beqa Lagoon Resort through
Defendant Beqa Lagoon Support Services, Inc. (hereafter, "Beqa
Services").  Plaintiff argues that Defendant Beqa Services is an
agent of Defendant Beqa Lagoon Resort, and that the Court's
jurisdiction over Defendant Beqa Services imputes to Defendant
Beqa Lagoon Resort by virtue of that agency.

The Plaintiff's argument requires the Court to examine two
theories of agency jurisdiction recognized in the Ninth Circuit:
(1) imputing the acts of an agent to the foreign principal in
evaluating specific jurisdiction; and (2) imputing the Court's
jurisdiction over an agent to the foreign principal under a
theory of "general agency" regardless of whether the act of the
agent gave rise to the cause of action.


**1.   FIRST THEORY OF AGENCY JURISDICTION: IMPUTING ACTS**

The Court's jurisdiction over an agent imputes to the
foreign principal when the agent's conduct, on behalf of the
principal, gives rise to the cause of action.  See Wells Fargo &
Co. v. Wells Fargo Express Co., 556 F.2d 406, 414 (9th Cir.
1977); Sher, 911 F.2d at 1366 ("For purposes of personal
jurisdiction, the actions of an agent are attributable to the

12

principal."). As in vicarious liability, the agent is considered to have acted on behalf of the principal. <u>Theo. H. Davies & Co. v. Republic of the Marshall Islands</u>, 174 F.3d 969, 974 (9th Cir. 1998) ("In determining the sufficiency of a defendant's contacts, it is not only defendant's activities in the forum, but also actions relevant to the transaction by an agent on defendant's behalf, which support personal jurisdiction." (quotations omitted) (quoting <u>Texas Trading & Milling Corp. v. Fed. Republic of Nigeria</u>, 647 F.2d 300, 314 (2d Cir. 1981)). The Court's jurisdiction over the agent, by virtue of the agent's conduct, imputes to the principal. <u>See, e.g.</u>, <u>Great Am. Ins. Co. v. Katani Shipping Co.</u>, 429 F.2d 612, 614 (9th Cir. 1970). Agency, in this context, is determined by the state law of the forum. <u>See</u>, <u>Ochoa v. J.B. Martin & Sons Farms</u>, 287 F.3d 1182, 1189 (9th Cir. 2002) (applying Arizona agency law, Court vacated district court's dismissal of foreign corporation for lack of personal jurisdiction because there was personal jurisdiction over agent who acted on the principal's behalf); <u>accord</u> <u>Product Promotions, Inc. v. Cousteau</u>, 495 F.2d 483, 493 (5th Cir. 1974); <u>Rice Growers Ass'n v. First Nat'l Bank</u>, 214 Cal. Rptr. 468, 475 (Cal. App. 1st Dist. 1985).

**(A)  Defendant Beqa Services Was An Agent For Defendant Beqa Lagoon Resort**

"An agent is one who acts on the principal's behalf and subject to the principal's control." Restatement (Third) Agency

§ 1.01. Agency is created when the principal gives actual or apparent authority to the agent to act on the principal's behalf. State v. Hoshijo, 76 P.3d 550, 561 (Haw. 2003) (citing Cho Mark Oriental Food, Ltd. v. K & K Int'l, 836 P.2d 1057, 1061 (Haw. 1992)); accord ; see also Hawaiian Paradise Park Corp. v. Friendly Broad. Co., 414 F.2d 750, 755 (9th Cir. 1969) (An agent "has power to bind his principal only if he has actual or apparent authority to do so. Actual authority may be express or implied.").

Defendant Beqa Lagoon Resort directs the court to United States v. Bonds for ten factors that the Court should consider in determining agency. 608 F.3d 495, 504 (9th Cir. 2010). Bonds, however, deals with California agency law and the agency that exists between an employer and employee. Id. Employer-emplpyee agency analysis, as it is interpreted under California law, is of little value here. The issue raised by the Plaintiff is focused on an alleged principal-agent relationship that arises out the interactions and agreements of two separate corporations. Focusing on how an employer controls the actions of an employee does not aid the analysis.

There is substantial support for a theory of apparent authority between Defendant Beqa Lagoon Resort and Defendant Beqa Services. The Court, however, does not reach the issue of apparent authority because Defendant Beqa Lagoon Resort gave

express actual authority to Defendant Beqa Services to act as its agent.

### (i) Agency: Actual Authority

"Actual authority exists only if there has been a manifestation by the principal to the agent that the agent may act on his account and consent by the agent so to act, and may be created by express agreement[.]" State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc., 978 P.2d 753, 763 (emphasis omitted)(quoting Cho Mark, 836 P.2d at 1061-62). "Express actual authority requires an oral or written agreement between the parties that the principal has delegated authority that the agent has accepted and that authorizes the agent to do certain acts." Cho Mark, 836 P.2d at 1062 (citing Hawaiian Paradise, 414 F.2d at 75). For the Plaintiff to prevail on a theory of actual authority, she must demonstrate that Defendant Beqa Lagoon Resort gave express actual authority to Defendant Beqa Services to act on its behalf.

***The Origins of Defendant Beqa Lagoon Resort and Defendant Beqa Services:***

The history between Defendant Beqa Lagoon Resort and Defendant Beqa reveals the existence of a principal-agent relationship from the time of the formation of Beqa Services. The resort is located on Beqa Island in Fiji. The resort was originally built and maintained in the early nineties by George Taylor, a "pioneer" in the eco-tourist industry. In 2003, a

group of investors, including Serghey Ilnytskyy and George
Taylor, acquired the resort through a holding company, Off-Shore
Fishing Company, LTD (hereafter, Defendant Beqa Lagoon Resort).
In 2004, Oleksandr Ilnytskyy, the son of Serghey Ilnytskyy, was
made a director of the resort.  Shortly after becoming a
director, O. Ilnytskyy created Beqa Lagoon Support Services, Inc.
in Nevada ("Beqa Services"). (Plaintiff Linda Rollins'
Opposition, Deposition of Oleksandr Ilnytskyy attached to
Declaration of Jessica N. Biernier as Exhibit 1 (hereafter
"Ilnytskyy Depo.")  at p.73 ln.19-25 (Doc. 70).)

During O. Ilnytskyy's deposition the following exchange
occurred:

> Q.   Let me-before you became a director, do you know
>      how The Resort got their bookings?
>
> A.   Yes, I believe so.
>
> Q.   Please tell me.
>
> A.   It got the bookings directly.
>
> Q.   Then between-I am sorry, were you finished?
>
> A.   And I believe they had travel-the owners or the
>      directors had a company in the United States.
>
>      .
>      .
>      .
>
> Q.   Then when Offshore Fishing Company Limited took over
>      The Resort in 2004, did that company in the United
>      States stop providing bookings to The Resort?
>
> A.   Yes.

Q.    Whose decision, as far as you know, was it that the
      company in the United States would stop doing bookings?

A.    My father's and his partners'.

         .
         .
         .

Q.    So did someone make a decision to set up a new company
      in the United States to provide bookings to The Resort?

A.    Yes.

Q.    Who made that decision?

A.    I did.

         .
         .
         .

Q.    Well, then why don't you tell me.  I'm trying to find
      out what the agreement was.  So could you tell me in
      terms of your understanding of the agreement you
      reached with The Resort in 2004, what was that
      agreement?

A.    Okay.  That I would—that my company, the Beqa Lagoon
      Support Services, would have the exclusive right to
      make bookings for The Resort that originated in the
      United States and Russia, and it can also handle—it has
      right to handle the bookings that come to Beqa Lagoon
      Support Services from other countries, but Fiji, New
      Zealand, and Australia.

(Ilnytskyy Depo. at p.74 ln.7 - p. 79 ln.6.)

     Before Defendant Beqa Lagoon Resort acquired the resort,

there was a company in the United States responsible for booking

travel to the resort.  (Id.)  O. Ilnytskyy's father and his

partners decided to stop using the company.  (Id.)  O. Ilnytskyy

testified that when he joined the board of directors for

Defendant Beqa Lagoon Resort, he proposed setting up a company in the United States that would be the resort's sole booking agent for customers originating in the United States and Russia. (Id.) Defendant Beqa Services was created thereafter to book trips on behalf of Defendant Beqa Lagoon Resort. (Id.) O. Ilnytskyy admitted that his motivation for being director of Defendant Beqa Lagoon Resort was that he "get[s] exclusive right to sell the company." (Id. at p.94 ln.5-10.) From its inception, Defendant Beqa Services was expressly created for the purpose of booking trips to the resort.

**_The Arrangement:_**

Defendant Beqa Lagoon Resorts claims that there is no contract between Defendant Beqa Lagoon Resort and Defendant Beqa Services. This argument, however, is rebutted by the testimony of O. Ilnytskyy who is an owner of Beqa Services and a director of Beqa Lagoon Resort. According to O. Ilnytskyy, Defendant Beqa Services has exclusive rights to market and book vacation packages to United States and Russian residents. (Id.) He testified to the terms of the contract between the Defendants. Defendant Beqa Lagoon Resort asserts there is no written document, but it is clear there is a contract. See generally McIntosh v. Murphy, 469 P.2d 177, 178 (Haw. 1970) (discussing contours of oral contracts in Hawaii).

**_Defendant Beqa Services Representations as to Beqa Lagoon Resort:_**

The agreement between Defendants Off-Shore Fishing and Beqa, however, was not only a contract to market a product. Defendant Beqa Services represents itself to actually be Defendant Beqa Lagoon Resort in the United States.

O. Ilnytskyy openly tells prospective customers that he is the owner of the resort. (Ilnytskyy Depo. at p.39 ln.3 -8.) At trade shows, O. Ilnytskyy and Debra Pekarick, the office manager for Defendant Beqa Services, display a banner that reads "Beqa Lagoon Resort." (Id. at p.46 ln.16-22, p.50 ln. 18 – p. 64 ln.25.) They distribute promotional materials about Beqa Lagoon Resort with contact information directing customers to Defendant Beqa Services' office in Nevada. (Id.)

All of Defendant Beqa Services' business cards read, "Beqa Lagoon Resort." (Id. at p. 64 ln.22-25.)

All mail sent to prospective and existing customers from Defendant Beqa Services state on the mailing envelope the mail is from "Beqa Lagoon Resort" but the return address is that of Defendant Beqa Services' office in Nevada. (Id. at p.99 ln.3 – p. 100 ln.19)

Defendant Beqa Lagoon Resort is aware that Defendant Beqa Services makes these representations to potential and existing customers and Defendant Beqa Resort benefits from Defendant Beqa Services' representations.

***The Financial Arrangement:***

There is a symbiotic financial arrangement between the Defendants.  According to Ms. Pekarick, the general manager of Defendant Beqa Services, booking trips to the resort comprises the majority of Defendant Beqa Services' business.  (Motion To Dismiss Complaint, Declaration of Debra Pekarick at ¶ 5 (Doc. 65).)  Conversely, Defendant Beqa Lagoon Resort relies on Defendant Beqa Services' marketing strategies to generate 80% of its business.  (Ilnytskyy Depo. at p.83 ln. 6-13.)  Defendant Beqa Lagoon Resort utilizes Beqa Services to secure and book 80% of its guests.

**Express Actual Authority:**

There is ample evidence demonstrating that Defendant Beqa Lagoon Resort gave express actual authority to Defendant Beqa Services to exclusively market and sell vacation packages to the resort in the United States and Russia.

**(ii) Agency: Control**

Hawaii Courts look to the Restatement of Agency to determine the degree of control the principal exercises, or is able to exercise, over an agent.  See Cho Mark, 836 P.2d at 1061-62.  The Restatement (Third) of Agency §1.01 (f)(1) states, "[c]ontrol is a concept that embraces a wide spectrum of meanings, but within any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms."  "In the absence of the essential characteristic of the right of

control, there is no true agency and, therefore, no imputation[.]" <u>Edwards v. Freeman</u>, 212 P.2d 883, 884 (Cal. 1949); <u>accord</u> <u>Wells Fargo</u>, 556 F.2d at 419-20. The principal, however, need not control the detailed activities of the agent, but must be able to dictate the ultimate result of the activity. <u>See,</u> <u>e.g.</u>, <u>Office of Disciplinary Counsel v. Gould</u>, 195 P.3d 1197, 1203 (Haw. 2008) (rejecting the argument that an attorney is not an agent because attorneys exercise broad control and discretion over representation); <u>accord</u> <u>Fare Deals, Ltd. v. World Choice Travel.com, Inc.</u>, 180 F. Supp. 2d 678, 685 (D. Md. 2001) ("Of course, a principal need not control the minutiae of an agent's actions; so long as the principal has ultimate responsibility to control the end result of [its] agent's actions, an agency relationship may yet exist." (quotations omitted) (quoting <u>Green v. H & R Block, Inc.</u>, 735 A.2d 1039, 1051 (Md. 1999))). As the <u>Green</u> court noted:

> [T]he control a principal exercises over its agent is not defined rigidly to mean control over the minutia of the agent's actions, such as the agent's physical conduct, as is required for a master-servant relationship. The level of control may be very attenuated with respect to the details. However, the principal must have ultimate responsibility to control the end result of his or her agent's actions; such control may be exercised by prescribing the agents' obligations or duties before or after the agent acts, or both.

735 A.2d at 1051; <u>accord</u> <u>Smalich v. Westfall</u>, 269 A.2d 476, 481 (Pa. 1970).

Here, the activity in question involves the marketing, selling, and booking of vacation packages to Defendant Beqa Lagoon Resort's resort in Fiji. It is not necessary that Defendant Beqa Lagoon Resort exercised control over the day-to-day operation of Defendant Beqa Services. At issue, however, is whether Defendant Beqa Lagoon Resort exercises control over the "end result" of Defendant Beqa Services' marketing and selling of vacation packages. See Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1200 (9th Cir. 1988) (noting that control over marketing activities is an indicia of agency); Green, 735 A.2d at 1051.

A careful examination of the relationship between Defendant Beqa Lagoon Resort and Defendant Beqa Services reveals how Defendant Beqa Lagoon Resort exercised fundamental control over the reservation services provided by Defendant Beqa Services.

**Defendant Beqa Services' Business Model:**

Defendant Beqa Services' business model involves selling vacation packages at published rates set by Defendant Beqa Lagoon Resort. (Ilnytskyy Depo. at p.89 ln.20 - p.91 ln.18.) Defendant Beqa Services collects payment from customers and sends a portion of that payment to Defendant Beqa Lagoon Resort, keeping the difference as income. (Id.) The published rates and the amount Defendant Beqa Services is required to send are determined by Defendant Beqa Lagoon Resort. (Id.) Defendant Beqa Lagoon Resort has the ability, at any time, to revoke Defendant Beqa

22

Services' right to market or sell trips to the resort.  In
essence, Defendant Beqa Lagoon Resort controls the selling price,
the profit margin, and the availability of the product.  If
Defendant Beqa Lagoon Resort decided to revoke Defendant Beqa
Services' exclusive right to market vacation packages to the
Resort in Fiji, Defendant Beqa Services would lose the majority
of its business.  (Motion to Dismiss Complaint, Declaration of
Debra Pekarick at ¶ 5, (Doc. 65.).)  Defendant Beqa Lagoon Resort
controls, "the end result," i.e. profit, "of his or her agent's
actions" "by prescribing the agents' obligations or duties
before" any sale occurs.  <u>Green</u>, 735 A.2d at 1051; <u>see</u> <u>Vanwyk</u>
<u>Textile Sys., B.V. v. Zimmer Mach. Am.</u>, 994 F. Supp. 350, 369
(W.D.N.C. 1997) (finding adequate control over an agent when
principal set the terms and prices for which agent could sell
particular products); <u>see also</u> Restatement (Third) of Agency
§1.01 (f)(1) ("Incentive structures that reward the agent for
achieving results affect the agent's actions.").

***Defendant Beqa Services' Company Name*:**

Defendant Beqa Services' company name, Beqa Lagoon Support
Services, Inc. further demonstrates Defendant Beqa Lagoon
Resort's control.  "In an organization, assigning a specified
function with a functionally descriptive title to a person tends
to control activity because it manifests what type of activities
are approved by the principal to all who know the function and

title, including their holder." Restatement (Third) of Agency §

1.01(f)(1). Defendant Beqa Services' company name suggests it

operates in a subservient position to Defendant Beqa Lagoon

Resort by providing "support services."

**The Website:**

There is also evidence that Defendant Beqa Lagoon Resort

exercises some measure of control over how Defendant Beqa

Services markets itself on the Internet. During O. Ilnytskyy's

deposition the following exchange occurred:

> Q.   There is a website, I believe – let me ask it as a
>      question.  Is there a website for Beqa Lagoon Resort?
>
> A.   Yes.
>
> Q.   What's the website address?
>
> A.   Beqalagoonresort.com
>
> Q.   Who registered that domain name?
>
> A.   I did.
>
> Q.   Who is the Webmaster or who manages that website, say
>      today?
>
> A.   Manages?
>
> Q.   Updates it?
>
> A.   Sometimes The Resort does, sometimes Debra [Peckarick]
>      does.

(Ilnytskyy Depo. at p.109 ln.23 – p.100 ln.10.)  O. Ilnytskyy

admits that both Defendant Beqa Services and Defendant Beqa

Lagoon Resort make changes to the website, exercising control

over it.

***Sufficient Control:***

Defendant Beqa Lagoon Resort controls Defendant Beqa Services by controlling the "end result" of Defendant Beqa Services' marketing strategy. The evidence and testimony put forward by the Plaintiff demonstrate that Defendant Beqa Lagoon Resort exercised the requite level of control over Defendant Beqa Services to find a principal-agent relationship.

**(iii)     Agency: Conclusion**

Based on the evidence and testimony put forward by the Plaintiff, Defendant Beqa Lagoon Resort gave express actual authority to Defendant Beqa Services to market and sell vacation packages exclusively within the United States and Russia, and Defendant Beqa Lagoon Resort exercises control over that activity. Defendant Beqa Services is an agent of Defendant Beqa Lagoon Resort.

**2.    Imputing Defendant Beqa Services' Actions To Defendant Beqa Lagoon Resort For Specific Jurisdiction**

The Plaintiff seeks to impute the Court's specific jurisdiction over Defendant Beqa Services to Defendant Beqa Lagoon Resort. As its agent, Defendant Beqa Services' actions are attributed to Defendant Beqa Lagoon Resort. <u>Sher</u>, 911 F.2d at 1366 ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal.")

In deciding if there is specific jurisdiction present, the

Court examines the quality and nature of Defendant Beqa Lagoon Resort's contacts with the forum state in relation to the cause of action. <u>Lake v. Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1987). To assert specific jurisdiction over Defendant Beqa Lagoon Resort through the actions of Defendant Beqa Services, the Court applies the Ninth Circuit Court of Appeal's three-prong test: (1) Did Defendant Beqa Services, acting on behalf of Defendant Beqa Lagoon Resort, purposefully avail itself of the privilege of conducting business in Hawaii; (2) did Defendant Beqa Services' conduct, attributable to Defendant Beqa Lagoon Resort, give rise to the Plaintiff's cause of action; and (3) is exercising specific jurisdiction over Defendant Beqa Lagoon Resort reasonable. <u>Ochoa</u>, 287 F.3d at 1189 (applying specific jurisdiction test to principal through an agent); <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1072 (9th Cir. 2001); <u>Theo. H. Davies & Co.</u>, 174 F.3d at 974.

The first and second considerations have already been disposed of by the Court's October 29, 2010 "ORDER DENYING MOTION TO DISMISS COMPLAINT AGAINST SPECIALLY APPEARING DEFENDANT BEQA LAGOON SUPPORT SERVICES, INC (DOC. 23)" (Doc. 42). Defendant Beqa Services purposefully availed itself of the privilege of conducting business in Hawaii and the Plaintiff's cause of action arose from Defendant Beqa Services' forum related activities. The remaining issue here is whether exercising jurisdiction over

Defendant Beqa Lagoon Resort is reasonable.

***Exercising Specific Jurisdiction Over Defendant Beqa Lagoon Resort Is Reasonable:***

An unreasonable exercise of jurisdiction violates the Due Process Clause. See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Defendant Beqa Lagoon Resort has the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985); Doe v. American Nat. Red Cross, 112 F.3d 1048, 1052 (9th Cir. 1997); Ballard, 65 F.3d at 1500.

In examining the reasonableness of jurisdiction over Defendant Beqa Lagoon Resort in Hawaii, the Court considers such factors as:

(1) the extent of defendant's purposeful interjection into the forum state;

(2) the burden on the defendant in defending in the forum;

(3) the importance of the forum to the plaintiff's interest in convenient and effective relief;

(4) the most efficient forum for judicial resolution of the dispute;

(5) the forum state's interest in adjudicating the dispute;

(6) the extent of the conflict with the sovereignty of the defendant's state; and

(7) the existence of an alternative forum.

See <u>Bancroft & Masters v. Augusta Nat'L</u>, 223 F.3d 1082, 1088 (9th Cir. 2000); <u>Sher</u>, 911 F.2d at 1364.  No one factor is dispositive; they must be balanced against the others.  <u>See Mattel, Inc. v. Greiner & Hauswer GmBh</u>, 354 F.3d 857, 866-67 (9th Cir. 2003).

In the Court's "ORDER DENYING MOTION TO DISMISS COMPLAINT AGAINST SPECIALLY APPEARING DEFENDANT BEQA LAGOON SUPPORT SERVICES, INC (DOC. 23)" the Court held that specific jurisdiction over Defendant Beqa Services was reasonable and did not violate due process.  In its analysis, the Court applied the seven factors to the actions of Defendant Beqa Services.  The Court's analysis regarding Defendant Beqa Services is identical to its analysis of Defendant Beqa Lagoon Resort, with the exception of the second factor.

The second factor, i.e. the burden on Defendant Beqa Lagoon Resort in litigating in Hawaii, is not so strong as to weigh heavily against exercising jurisdiction.  The burden of litigating in Hawaii is not so great as to constitute a due process violation.  Modern developments in communication and transportation have reduced the burden of litigating in another forum.  <u>See Corporate Inv. Bus. Brokers v. Melcher</u>, 824 F.2d 786, 791 (9th Cir. 1987).  The inconvenience of travel "is no longer weighed heavily given the modern advances in communication and transportation."  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d

1316, 1323-24 (9th Cir. 1998).

Since the balance of factors in exercising jurisdiction over Defendant Beqa Lagoon Resort is the same as exercising jurisdiction over Defendant Beqa Services, the balance of factors weighs in favor of exercising jurisdiction. Defendant Beqa Lagoon Resort has not presented a compelling case that the exercise of jurisdiction over it would be "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." Burger King Corp., 471 U.S. at 477 (quotations omitted). Exercise of specific jurisdiction over Defendant Beqa Lagoon Resort is reasonable.

### 3. The First Theory Of Agency Jurisdiction Gives The Court Specific Jurisdiction Over Defendant Beqa Lagoon Resort

The Court has specific jurisdiction over Defendant Beqa Lagoon Resort. Defendant Beqa Services, whom the Court has specific jurisdiction over, was an agent for Defendant Beqa Lagoon Resort and "[f]or [the] purposes of personal jurisdiction, the actions of an agent are attributable to the principal." Sher, 911 F.2d at 1366. Defendant Beqa Lagoon Resort has not demonstrated that specific jurisdiction is unreasonable. Defendant Off-Shore's motion to dismiss for lack of personal jurisdiction is **DENIED**.

### B. THE SECOND THEORY OF AGENCY JURISDICTION: IMPUTING JURISDICTION

In the second theory of agency jurisdiction the Court's jurisdiction occurs because an agent to the foreign principal has a "general agency" relationship. Id. at 421-23; see Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003); Chan v. Society Expeditions, 39 F.3d 1398, 1406 (9th Cir. 1994). The agent's jurisdictional contacts with the forum are imputed to the principal, even when the general agency relationship did not give rise to the cause of action. E.g., Doe v. Unocal Corp., 248 F.3d 915, 928 (9th Cir. 2001).

The definition of "general agency" in the jurisdictional context is unsettled law. See Bauman v. DaimlerChrysler Corp., 579 F.3d 1088, 1095 (9th Cir. 2009) vacated by 603 F.3d 1141 (9th Cir. 2010). The Ninth Circuit Court of Appeals defines "general agency" as:

> The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it perform services that are sufficiently important to the foreign corporation that it did not have a representative to the perform them, the corporations's own officials would undertake to perform substantially similar services.[2]

Unocal, 248 F.3d at 928 (quotations omitted) (quoting Chan, 39 F.3d at 1405). This definition of "general agency" is what the

---

[2] The use of "parent" and "subsidiary" are interchangeable with "principal" and "agent" for the purposes of general agency discussion because "it is clear that whether the alleged general agent was a subsidiary of the principal or independently owned is irrelevant." Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 423 (9th Cir. 1977).

parties call the "representative services doctrine."  In the
Ninth Circuit, it is unsettled as to what degree of control the
parent / principal must have over the subsidiary / agent under a
theory of general agency.

In Unocal, the Ninth Circuit Court of Appeals attempted to
clarify the definition of general agency.  The Unocal Court, in
discussing the theory of general agency jurisdiction explained,
"the question to ask is not whether the American subsidiaries can
formally accept orders for their parents, but rather whether, in
the truest sense, the subsidiaries' presence substitutes for the
presence of the parent."  Id. at 928 (quoting Gallagher v. Mazda
Motor of Am., Inc., 781 F. Supp. 1079, 1084 (E.D. Pa. 1992)).
The Unocal Court held that the California subsidiary in question
did not substitute for the presence of the foreign parent
corporation under a theory of general agency.  Id. at 932.  The
Unocal Court, while still discussing general agency, further
reasoned that "the record does not support plaintiff's contention
that [parent corporation] directly controls the day-to-day
activities of the California [subsidiaries]."  Id.

Since the decision in Unocal, disharmony has emerged among
courts about whether general agency jurisdiction requires the
principal to control the day-to-day operations of the agent.  In
Modesto City Sch. v. Riso Kagaku Corp., a California District
Court interpreted Unocal as not requiring day-to-day control over

31

agent's day-to-day operation. 157 F. Supp. 2d 1128, 1133 (E.D. Cal. 2001) ("In so holding, this court does not suggest that control is wholly irrelevant to the general agency test. Rather, the court finds that it is not the *sine qua non* of the general agency test."). In <u>SGI Air Holdings II LLC v. Novartis Int'l AG</u>, a Colorado District Court upheld jurisdiction under a theory of general agency jurisdiction because the parent did exercise day-to-day control over the agent's operations. 239 F. Supp. 2d 1161, 1166 (D. Colo. 2003) ("[General agency jurisdiction] often depend[s] on the same type of evidence regarding day to day control[.]").

Seeking to resolve this issue of control, the Ninth Circuit Court of Appeals addressed whether control of day-to-day operations is required in general agency jurisdiction in <u>Bauman</u>. 579 F.3d at 1095-96. After issuing an opinion, however, the Ninth Circuit Court of Appeals recently granted the Appellants' Petition for Rehearing, and vacated its opinion. <u>Bauman v. Daimlerchrysler Corp.</u>, 603 F.3d 1141 (9th Cir. 2010). Until the Ninth Circuit Court of Appeals addresses whether the parent / principal must exercise day-to-day control over the agent / subsidiary, the definition of general agency will remain unsettled.

In this case, however, the Court has specific jurisdiction over Defendant Beqa Lagoon Resort independent of general agency.

The Court does not reach the issue of general agency.

## II. FORUM SELECTION CLAUSE

Defendant Beqa Lagoon Resort seeks enforcement of a contract allegedly signed by Plaintiff in Fiji containing a forum selection clause.  Defendant Beqa Lagoon Resort puts forward a document titled "Liability and Responsibility Agreement and Release" (hereafter "Liability Release") containing a clause which reads, "The law of Fiji governs this Agreement and action suit or proceedings shall be brought before the Courts of Fiji, which shall have exclusive jurisdiction" (hereafter, "Forum Selection Clause").  (Motion To Dismiss Complaint, Declaration of Mark Propert, Exhibit A (Doc. 65).)  Plaintiff argues that the forum selection clause contained in the Liability Release should not be enforced because (A) the Liability Release is inadmissible evidence and (B) the Forum Selection Clause is unenforceable.

### A.    ADMISSIBILITY OF LIABILITY RELEASE

Plaintiff objects to the Liability Release on the grounds of authenticity and hearsay.

### 1.    Authenticity

Plaintiff argues that the Liability Release provided by Defendant has not been authenticated.

"The requirement of authentication or identification as a

condition precedent to admissibility is satisfied by evidence
sufficient to support a finding that the matter in question is
what its proponent claims." Fed. R. Evid. 901(a). Testimony of
a witness with knowledge of the matter satisfies the authenticity
requirement. Fed. R. Evid. 901(b)(1). The test is whether there
is evidence, either circumstantial or direct, that the document
is what it purports to be. <u>Alexander Dawson, Inc. v. N.L.R.B.</u>,
586 F.2d 1300, 1302 (9th Cir. 1978).

Mark Propert is the general manager of the resort and he is
responsible for "explaining [the resort's] standard release to
guests, obtaining signatures and filing, keeping and storing
those records." (Motion To Dismiss Complaint, Declaration of
Mark Propert at ¶ 2 (Doc. 65).) Mr. Propert, in submitting the
Liability Release states, "I went to our records and retrieved
the release that she signed. I am attaching as Exhibit A to my
declaration, a true and correct copy of the release signed by
Linda Rollins." (<u>Id.</u> at ¶ 4.)

The Plaintiff does not dispute that the signature on the
Liability Release is hers, nor does she deny signing the release.
The Plaintiff does not dispute Mr. Propert's declaration. There
is no allegation of fraud or deceit. Mr. Propert is a person
with knowledge of the Liability Release and can testify that the
document submitted is what he claims it to be. The Court is
"satisfied that the [document] is accurate, authentic, and

generally trustworthy." <u>United States v. Panaro</u>, 266 F.3d 939, 951 (9th Cir. 2001) (quoting <u>United States v. Mouton</u>, 617 F.2d 1379, 1383-84 (9th Cir. 1980)).

**2.  Hearsay**

Plaintiff argues that the Liability Release is inadmissible hearsay.  Plaintiff argues that the Liability Release is not a business record because it was not a record created in the course of regularly conducted activity.

The Liability Release appears to fall squarely within the business records exception to the hearsay rule.  A document qualifies for the business record exception under Rule 803(6) when the document was: "[1] made at or near the time of the events it records or describes, [2] by, or from information transmitted by, a person with knowledge of those events, [3] kept in the course of a regularly conducted business activity, and [4] part of a business's regular practice." <u>Millenkamp v. Davisco Foods Int'l, Inc.</u>, 562 F.3d 971, 980 (9th Cir. 2009) (quotations omitted) (quoting Fed R. Evid. 803(6)).

Mr. Propert states that he personally distributes the Liability Release to all guests staying at the resort who wish to go snorkeling or diving.  (Motion To Dismiss Complaint, Declaration of Mark Propert at ¶ 3 (Doc. 65).)  If the guest does not sign the Liability Release, they are not allowed to snorkel or dive.  (<u>Id.</u>)  He explains the resort's document storage

35

procedure as follows:  "After we collect the signed release forms, we file them in our business office on the resort premises.  After a week or two, we move them into water-proof containers which we keep in our storage facility on-site." (Id.)

According to the undisputed declaration of Mr. Propert, the Liability Release was created at the time of the events it describes, i.e. before the Plaintiff went diving.  The Liability Release was signed by Plaintiff.  The Liability Release was part of a standardized business practice of the resort and Mr. Propert executed that standard practice in collecting, storing, and retrieving the document.  All four elements of the business record exception have been satisfied.  The Liability Release falls within the business records exception to the hearsay bar.

## B.    ENFORCEABILITY OF FORUM SELECTION CLAUSE

In determining whether to grant Defendant's Motion to Dismiss based on the enforcement of the Forum Selection Clause, the Court considers the following issues: (1) is the forum selection clause valid; (2) is the Forum Selection Clause mandatory; and (3) is enforcement of the clause unreasonable.

### 1.    There Are Questions about the Validity of the Contract

As a preliminary matter, the Forum Selection Clause in the Liability Release must be valid.  The Ninth Circuit Court of Appeals uses a two-pronged analysis to determine whether a forum

selection clause is valid. <u>Corna v. Am. Hawaii Cruises, Inc.</u>,
794 F. Supp. 1005, 1008 (D. Haw. 1992) (citing <u>Deiro v. Am.</u>
<u>Airlines, Inc.</u>, 816 F.2d 1360, 1364 (9th Cir. 1987)). The court
must determine whether: (1) the terms and conditions of the
contract affecting legal rights were reasonably communicated to
the plaintiff; and (2) the forum selection clause is
fundamentally fair. <u>Corna</u>, 794 F. Supp. at 1008.

**(i) Reasonable Communication**

The legal effect of a forum selection clause depends on
whether the existence of the clause was reasonably communicated
to the plaintiff. <u>See</u> <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499
U.S. 585, 595 (1991); <u>Effron v. Sun Line Cruises, Inc.</u>, 67 F.3d
7, 9 (2d Cir. 1995). In making this determination, the court
must examine the physical characteristics of the contract, such
as the size of the type, conspicuousness, and clarity of notice.
<u>Corna</u>, 794 F. Supp. at 1008. The court must also consider the
circumstances surrounding the formation of the contract,
including extrinsic factors that would indicate the plaintiff's
ability to become meaningfully informed of the contractual terms
at stake. <u>Id.</u>

Here, the Forum Selection Clause is located directly above
the signature block and printed in the same font size as the
other sections of the agreement (Motion To Dismiss Complaint,
Declaration of Mark Propert, Exhibit A "Liability Release" (Doc.

37

65).)  It appears that Plaintiff had adequate opportunity to read
and understand the terms of the contract.  Mr. Propert, the
general manager of the resort, was available to explain the
Liability Release to Plaintiff and answer any questions.  (Motion
To Dismiss Complaint, Declaration of Mark Propert at ¶ 3 (Doc.
65).)

### (ii) Fundamental Fairness

The Forum Selection Clause must be "fundamentally fair" in
its formation.  <u>Corna</u>, 794 F. Supp. at 1008; <u>see</u> <u>Carnival Cruise</u>
<u>Lines</u>, 499 U.S. at 595.  In the present case, there is no
evidence that Plaintiff was made aware of the Liability Release
containing the Forum Selection Clause until after she arrived at
the resort in Fiji.  (Motion To Dismiss Complaint, Declaration of
Mark Propert at ¶ 3 (Doc. 65).)  Defendant conceded during oral
argument that the Plaintiff had paid for her dive trip to Fiji
before she arrived at the resort.  It appears that it wasn't
until immediately before going on the dive, after she had
traveled across the Pacific Ocean, that the Plaintiff was
required to sign the Liability Release.  Defendant argues that
Plaintiff had the option to simply dive with another operation if
she did not want to sign Liability Release.  (Motion To Dismiss
Complaint at 15 (Doc. 65).)  There is nothing before the Court to
clarify Plaintiff's options for going diving with another
operation.

The Court does not reach the fundamental fairness issue, as there are independent reasons for refusing to enforce the Forum Selection Clause.

### 2.     The Forum Selection Clause Language Intended it to Be Mandatory

The Court must determine whether the clause is mandatory by looking to the wording of the agreement and applying ordinary principles of contract interpretation.  <u>Talatala v. Nippon Yusen Kaisha Corp.</u>, 974 F. Supp. 1321, 1325 (D. Haw. 1997) (citing <u>Docksider, Ltd. v. Sea Tech., Ltd.</u>, 875 F.2d 762, 764 (9th Cir. 1989)).  Plaintiff signed a Liability Release that contained the following choice-of-law provision and forum selection clause: "The law of Fiji governs this Agreement and action suit or proceeding **shall be** brought before the Courts of Fiji, which shall have **exclusive jurisdiction**."  (Motion To Dismiss Complaint, Declaration of Mark Propert, Exhibit A (Doc. 65) (emphasis added).)  The Ninth Circuit Court of Appeals interprets the word "exclusive" to mean that the contracting parties entered into a mandatory forum selection clause.  <u>Hunt Wesson Foods, Inc. v. Supreme Oil Co.</u>, 817 F.2d 75, 77 (9th Cir. 1987).  The language in the Forum Selection Clause shows it is intended to be mandatory.

### 3.     Enforcement of the Forum Selection Clause is Unreasonable

If a forum selection clause is valid and binding, the Court

must enforce the clause absent a showing by the plaintiff that enforcement would be unreasonable or unjust. <u>Talatala</u>, 974 F. Supp. at 1325. The United States Supreme Court's decision in <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972) sets forth the issues to be considered regarding the enforceability of forum selection clauses in international agreements.[3] <u>See</u> <u>Arqueta</u>, 87 F.3d at 324-325.

Forum selection clauses are *prima facie* valid and should be enforced by the courts unless the resisting party proves enforcement is unreasonable under the circumstances. <u>Bremen</u>, 407 U.S. at 10; <u>Docksider, Ltd. v. Sea Technology, Ltd.</u>, 875 F.2d 762, 763 (9th Cir. 1989)). The Supreme Court has construed this exception narrowly. <u>Arqueta</u>, 87 F.3d at 325. A forum selection clause is unreasonable if: (1) its incorporation into the contract was the result of fraud or overreaching; (2) enforcement would effectively deprive the complaining party of his day in court or deprive him of any remedy; or (3) enforcement of the clause would contravene a strong public policy of the forum in

---

[3] <u>Bremen</u> is an admiralty case involving a shipping contract negotiated by two sophisticated business entities. Its standard has also been applied to forum selection clauses between individuals and corporations. <u>Arqueta</u>, 87 F.3d at 325 (citing <u>Spradlin v. Lear Siegler Mgmt. Servs. Co.</u>, 926 F.2d 865, 867 (9th Cir. 1991) (applying the <u>Bremen</u> standard to affirm enforcement of a forum selection clause in an employment contract); <u>Manetti-Farrow, Inc. v. Gucci Am., Inc.</u>, 858 F.2d 509, 512 (9th Cir. 1988)(applying the <u>Bremen</u> standard to affirm enforcement of a forum selection clause in an exclusive dealership contract)).

which the suit is brought.  <u>See</u> <u>Bremen</u>, 401 U.S. at 12-13;

<u>Arqueta</u>, 87 F.3d at 325.  The party seeking to avoid the forum

selection clause bears "a heavy burden of proof."  <u>Bremen</u>, 401

U.S. at 17.

The party seeking to avoid enforcement of the forum

selection clause must demonstrate that trial in the specified

foreign forum would be so difficult and inconvenient that she

would effectively be denied a meaningful day in court.[4]  <u>Arqueta</u>,

87 F.3d at 325 (quoting <u>Pelleport Investors, Inc. v. Budco</u>

<u>Quality Theatres</u>, <u>Inc.</u>, 741 F.2d 273, 281 (9th Cir. 1984)).

**Fiji is Not a Reasonable Alternative Forum:**

There is a long history of political, economic, and judicial

unrest in Fiji.  Since 1987, there have been a series of military

coup d'etat in Fiji that have directly threatened the Fijian

judicial system and the rule of law.  (<u>See</u> Plaintiff Linda

Rollins' Opposition, United States Department of State Travel

---

[4] Federal courts have recognized that deciding whether to
enforce a forum selection clause involves similar analysis to
determining the adequacy of an alternative forum under the
doctrine of *forum non conveniens*.  <u>See</u> <u>Marra v. Papandreou</u>, 59 F.
Supp. 2d 65, 71 (D.D.C. 1999) ("In making this determination, the
court conducts the same analysis used to determine whether there
is an adequate alternative forum in the *forum non conveniens*
context."); <u>Takemura & Co. v. The S.S. Tsuneshima Maru</u>, 197 F.
Supp. 909, 912 (S.D.N.Y. 1961) ("Factors determinative of
unreasonableness [of a forum contractually agreed to by the
parties] are similar to those involved in deciding an issue of
forum non conveniens and include . . . the ability of the foreign
forum to adjudicate the matter fairly.")

Advisory Report dated January 19, 2010, attached to Declaration of Jessica N. Biernier as Exhibit 3 at 1 (Doc. 70).)

Most recently, on December 5, 2006, a military commander in Fiji deposed the lawfully elected government. (<u>Id.</u>) The military-backed regime established an unelected interim government, which currently rules Fiji. (<u>Id.</u>) On April 10, 2009, the Fiji High Court, in the face of political opposition, ruled that the unelected interim government was illegal. (<u>Id.</u>) The military-backed regime responded by abrogating Fiji's Constitution and removing all members of the judiciary from office. (<u>Id.</u>) Since the suspension of the Fijian Constitution, the military-backed regime rules by decree, enforcing Public Emergency Regulations that limit basic freedoms. (<u>Id.</u>)

Since the suspension of Fiji's Constitution, the United States Department of State has issued Travel Advisory Reports stating that the judicial system in Fiji is not currently functioning properly and that the basic rights of due process are being abrogated. Specifically, in the United States Department of State's January 19, 2010 Travel Advisory, it states: "The independence of Fiji's law enforcement and judicial systems is compromised, putting into question protections ordinarily afforded by the rule of law." (<u>Id.</u> at 2.) In its most recent Travel Advisory, issued January 5, 2011, the United States Department of State clearly indicates that the situation in Fiji

remains unchanged: "The unpredictable political situation, the deterioration in the rule of law, and the compromised independence of the judicial system following the December 2006 military coup limit basic freedoms." <u>U.S. Dept. Of State</u>, International Travel Information Fiji, January 5, 2011. Defendant Beqa Lagoon Resort, in an attempt to rebut the U.S. State Department's reports, puts forward the Declaration of Shelvin Amit Singh, who represents himself to be a Fijian attorney. (Reply Memorandum In Support Of Motion To Dismiss Complaint, Declaration of Shelvin Amit Singh (hereafter "Singh Declaration")(Doc. 74)). Defendant Beqa Lagoon Resort did not provide a curriculum vitae for Mr. Singh or any context through which the court could weigh his testimony. Mr. Singh states that there is "no truth to any contention that Fiji has no court system or that it is not presently functioning or that a personal injury claim could not be prosecuted in Fiji." (<u>Id.</u> at ¶ 7.) Mr. Singh's assertion that the abrogation of the constitution in 2009 was only temporary, and the judiciary is now functioning smoothly, is refuted by the United States Department of State January 5, 2011 Travel Advisory Report.

Mr. Singh directs the court to two website addresses, which he argues demonstrate that the Fiji's Courts are functioning. (<u>Id.</u>) The websites offer no information as to whether the functioning of the Fiji courts would allow the Plaintiff to

fairly litigate her claims. The United States Department of
State's current Travel Advisory Report on Fiji indicates that the
Fijian Judiciary is compromised. It is not sufficient that a
court exists in Fiji to hear the Plaintiff's claims. The forum
must be able to fairly adjudicate the case.

All reasonable inferences must be resolved in favor of the
nonmoving party. <u>Murphy</u>, 362 F.3d at 1139; <u>see</u> <u>Jones v. GNC
Franchising, Inc.</u>, 211 F.3d 495, 498-499 (9th Cir. 2000)
(district court retains broad discretion in deciding whether to
enforce a forum selection clause). Forcing the Plaintiff to
litigate her claims in a forum where the rule of law
deteriorating and the judiciary is compromised would be
unreasonable. Defendant's request to enforce the forum selection
clause is **DENIED**.

## <u>CONCLUSION</u>

The Court has specific jurisdiction over Defendant Beqa
Lagoon Resort because:

(1) Defendant Beqa Lagoon Resort's agent, Defendant Beqa
Services, purposefully availed itself of the
protections of Hawaii law;

(2) Defendant Beqa Services' conduct, on behalf of
Defendant Beqa Lagoon Resort, gave rise to the
Plaintiff's cause of action;

(3)   Specific jurisdiction is reasonable and does not violate the protections of due process; and

(4)   The Court will not enforce the forum selection clause because doing do would force the Plaintiff to litigate her claim in Fiji, where the rule of law and the judicial system are compromised.

Defendant Beqa Lagoon Resort's MOTION TO DISMISS COMPLAINT AGAINST SPECIALLY APPEARING Defendant Beqa Lagoon Resort COMPANY LTD, OR ALTERNATIVELY, TO ENFORCE THE FORUM SELECTION CLAUSE (DOC. 65) is **DENIED**.

IT IS SO ORDERED.

DATED: March 31, 2011, Honolulu, Hawaii.



/S/ Helen Gillmor
_____

Helen Gillmor
United States District Judge

<u>Linda Rollins v. Maui Dreams Dive Company, et al.</u>, CV 10-00336 HG-KSC**, ORDER DENYING MOTION TO DISMISS COMPLAINT AGAINST SPECIALLY APPEARING DEFENDANT OFF-SHORE FISHING COMPANY LTD, OR ALTERNATIVELY, TO ENFORCE THE FORUM SELECTION CLAUSE (DOC. 65).**